**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

```
-----------------------------x
                             :
BELKIS SANCHEZ               :    Civil No. 6:18CV06085 (HBF)
                             :
v.                           :
                             :
NANCY A. BERRYHILL, ACTING   :
COMMISSIONER, SOCIAL SECURITY :
ADMINISTRATION               :
                             :
-----------------------------x
```

<u>**RULING ON CROSS MOTIONS**</u>

Plaintiff Belkis Sanchez brings this action pursuant to 42 U.S.C. §405(g), seeking review of a final decision of the Commissioner of Social Security which denied her application for Disability Insurance Benefits ("DIB") under Title II Social Security, 42 U.S.C. §401 <u>et seq</u>. ("the Act"). Plaintiff has moved to reverse or remand the case for a rehearing. The Commissioner has moved to affirm.

For the reasons set forth below, plaintiff's Motion for Judgment on the Pleadings **[Doc. #12]** is **GRANTED**. Defendant's Motion for Judgment on the Pleadings **[Doc. #17]** is **DENIED.**

**I. ADMINISTRATIVE PROCEEDINGS**

The procedural history of this case is not disputed. Plaintiff protectively filed an application for DIB on August 29, 2014, alleging disability as of November 13, 2012.[1]

---

[1] Plaintiff's date last insured for Title II benefits is December

[Certified Transcript of the Record, Compiled on April 27, 2018, Doc. #7 (hereinafter "Tr.") 15, 64, 77]. Plaintiff alleged disability due to "right knee injury [and] neck injury." [Tr. 64]. Her DIB claim was denied on November 12, 2014. [Tr. 77]. Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ") on November 25, 2014. [Tr. 101-02].

On August 19, 2016, Administrative Law Judge ("ALJ") Michael Carr held a hearing, at which plaintiff appeared with an attorney and testified. [Tr. 36-63]. A vocational expert, Dr. Basset Duke, testified at the hearing. [Tr. 55-62]. On November 23, 2016, the ALJ found that plaintiff was not disabled, and denied her claim. [Tr. 9-35]. Plaintiff filed a timely request for review on November 30, 2016. [Tr. 181-82]. On December 3, 2017, the Appeals Council denied review, thereby rendering ALJ Smith's decision the final decision of the Commissioner. [Tr. 1-8]. The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff, represented by counsel, timely filed this action for review and moves to reverse and/or remand the Commissioner's decision.

---

31, 2018. [Tr. 17].

## II.   STANDARD OF REVIEW

The review of a social security disability determination involves two levels of inquiry. First, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the Court must decide whether the determination is supported by substantial evidence. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence."). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of

the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alteration added) (citation omitted). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citation omitted). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, Civil Action No. 3:13-CV-00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (internal citations omitted).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to

determining whether the SSA's conclusions were supported by
substantial evidence in the record and were based on a correct
legal standard." <u>Talavera v. Astrue</u>, 697 F.3d 145, 151 (2d Cir.
2012) (citations and internal quotation marks omitted).
"[W]hether there is substantial evidence supporting the
appellant's view is not the question here; rather, we must
decide whether substantial evidence supports <u>the ALJ's</u>
<u>decision</u>." <u>Bonet ex rel. T.B. v. Colvin</u>, 523 F. App'x 58, 59 (2d
Cir. 2013)(citations omitted).

## III. SSA LEGAL STANDARD

Under the Social Security Act, every individual who is
under a disability is entitled to disability insurance benefits.

To be considered disabled under the Act and therefore
entitled to benefits, Ms. Sanchez must demonstrate that she is
unable to work after a date specified "by reason of any
medically determinable physical or mental impairment which can
be expected to result in death or which has lasted or can be
expected to last for a continuous period of not less than 12
months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments
must be "of such severity that [s]he is not only unable to do
h[er] previous work but cannot, considering h[er] age,
education, and work experience, engage in any other kind of
substantial gainful work which exists in the national economy."
42 U.S.C. §423(d)(2)(A); <u>see also</u> 20 C.F.R. §404.1520(c)

(requiring that the impairment "significantly limit[ ] ... physical or mental ability to do basic work activities" to be considered "severe").[2]

There is a familiar five-step analysis used to determine if a person is disabled. <u>See</u> 20 C.F.R. §404.1520(a)(4). In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

<u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982) (<u>per curiam</u>). If and only if the claimant does <u>not</u> have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work

---

[2] DIB and SSI regulations cited herein are virtually identical. The parallel SSI regulations are found at 20 C.F.R. §416.901 <u>et seq.</u>, corresponding to the last two digits of the DIB cites (e.g., 20 C.F.R. §404.1520 corresponds with 20 C.F.R. §416.920).

which the claimant could perform. Under the cases
previously discussed, the claimant bears the burden of
proof as to the first four steps, while the Secretary
must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens

of production and persuasion, but if the analysis proceeds to

the fifth step, there is a limited shift in the burden of proof

and the Commissioner is obligated to demonstrate that jobs exist

in the national or local economies that the claimant can perform

given his residual functional capacity." Gonzalez ex rel. Guzman

v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d

Cir. 2010) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003)); Poupore

v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)).

"Residual functional capacity" is what a person is still capable

of doing despite limitations resulting from her physical and

mental impairments. See 20 C.F.R. §§404.1545(a), 416.945(a)(1).

"In assessing disability, factors to be considered are (1)

the objective medical facts; (2) diagnoses or medical opinions

based on such facts; (3) subjective evidence of pain or

disability testified to by the claimant or others; and (4) the

claimant's educational background, age, and work experience."

Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978) (citation

omitted). "[E]ligibility for benefits is to be determined in

light of the fact that the Social Security Act is a remedial

statute to be broadly construed and liberally applied." Id.
(citation and internal quotation marks omitted).

## IV.    THE ALJ'S DECISION

Following the above-described five step evaluation process,
ALJ Carr concluded that plaintiff was not disabled under the
Social Security Act. [Tr. 9-35]. At step one, the ALJ found that
plaintiff had not engaged in substantial gainful activity since
November 13, 2012, the alleged onset date. [Tr. 17].

At step two, the ALJ found that plaintiff had degenerative
disc disease of the cervical spine and lumbar spine; right
shoulder impairment, status-post surgery; and meniscus and
ligament tears of the right knee impairment, status-post
surgery, all of which are severe impairments under the Act and
regulations. [Tr. 17-19].

At step three, the ALJ found that plaintiff's impairments,
either alone or in combination, did not meet or medically equal
the severity of one of the listed impairments in 20 C.F.R. Pt.
404, Subpart P, Appendix 1 (20 C.F.R. §§404.1520(d), 404.1525
and 404.1526). [Tr. 19]. The ALJ specifically considered
Listings 1.02(A) and (B) (major dysfunction of joints), and 1.04
(disorders of the spine). [Tr. 19-20].

Before moving on to step four, the ALJ found plaintiff had
the RFC

to perform light work, as defined in 20 C.F.R.

404.1567(b), except she can stand and/or walk for 4
hours in an 8-hour workday; while remaining at the
workstation, she must be allowed to alternate sitting
for 2 minutes after every hour of standing, to
alternate to sitting for 2 minutes after every hour of
walking, and to alternate to standing for 2 minutes
after every hour of sitting; she can occasionally
climb ramps and stairs, but she can never climb
ladders, ropes, or scaffolds; she can occasionally
balance, stoop, kneel, crouch, and crawl; she can
occasionally push and/or pull with the right, dominant
upper extremity; she can frequently handle and finger
with the right upper extremity; she can never reach
overhead with the right upper extremity; and she
cannot perform jobs requiring commercial operation of
a motor vehicle or work with conveyor belts or
assembly lines.

[Tr. 20-21].

At step four, the ALJ found plaintiff was unable to

perform any past relevant work. [Tr. 29]. At step five,

after considering plaintiff's age, education, work

experience and RFC, the ALJ found that jobs existed in

significant numbers in the national economy that plaintiff

could perform.[3] [Tr. 30-31].

The ALJ concluded that plaintiff had not been under a

disability from August 29, 2014, the alleged onset date of

disability, through November 23, 2016, the date of the

ALJ's decision. [Tr. 31].

_____

[3] Plaintiff was 43 years old, which is defined as a younger
individual age 18-49, on the alleged disability onset date. 20
C.F.R. §404.1563. [Tr. 29]. She completed high school in Cuba
and moved to the United States when she was 29 years old. [Tr.
29].

## V. DISCUSSION

### A. <u>RFC</u>

Plaintiff first argues that the "[t]he ALJ failed to consider all the relevant evidence in the record, which materially affected his assessment of the opinion evidence, the RFC determination, and his consideration of plaintiff's allegations." [Doc. #13-1 at 12]. Specifically, she argues that he "failed to notice" treatment records from her treating physicians Drs. Cabatu and Capiola; rejected Dr. Capiola's prescription for a cane, contending that no treatment records were provided; and rejected Dr. Cabatu's opinion because there are no treatment records in evidence. [Doc. #13 at 12 (citing Tr. 27-29)]. Plaintiff contends that these failures render the RFC determination unsupported by substantial evidence. The Court agrees.

An ALJ has the responsibility to determine a claimant's RFC based on all the evidence of record. 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1). The RFC is an assessment of "the most [the disability claimant] can still do despite [his or her] limitations." 20 C.F.R. 0§404.1545(a)(1), 416.945(a)(1). Although "[t]he RFC determination is reserved for the commissioner...an ALJ's RFC assessment is a medical determination that must be based on probative evidence of record.... Accordingly, an ALJ may not substitute his own

judgment for competent medical opinion." Walker v. Astrue, No. 08-CV-0828(A)(M), 2010 WL 2629832, at *6 (W.D.N.Y. June 11, 2010)(quoting Lewis v. Comm'r of Soc. Sec., No. 6:00CV1225(GLS), 2005 WL 1899, at *3 (N.D.N.Y. Aug. 2, 2005)(internal citations omitted)). Nevertheless, plaintiff has the burden to demonstrate functional limitations that would preclude any substantial gainful activity. See 20 C.F.R. §§§404.1545(a)(3), 416.945(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity."); 42 U.S.C. §423(d)(5)(A)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.").

Pursuant to 20 C.F.R. §§404.1527(c)(2) and 416.927(c)(2), a treating source's opinion will usually be given more weight than a non-treating source. If it is determined that a treating source's opinion on the nature and severity of a plaintiff's impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," the opinion is given controlling weight. 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2). If the opinion, however, is not "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques, then the opinion cannot be entitled to controlling

weight. Id. If the treating source's opinion is not given controlling weight, the ALJ considers the following factors in weighing the opinion: length of treatment relationship, frequency of examination, nature and extent of the treatment relationship, relevant evidence used to support the opinion, consistency of the opinion with the entire record, and the expertise and specialized knowledge of the source. See 20 C.F.R. §§404.1527(c)(2)-(6), 416.927(c)(2)-(6); Social Security Ruling ("SSR") 96-2P, 1996 WL 374188, at *2 (S.S.A. July 2, 1996). "While an ALJ may discount a treating physician's opinion if it does not meet this standard, the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" Pilarski v. Comm'r of Soc. Sec., No. 13-CV-6385-FPG, 2014 WL 4923994, at *2 (W.D.N.Y. Sept. 30, 2014)(quoting Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004).

Here the ALJ erred in assessing "little weight" to the opinions of Drs. Orsuville Cabatu and David Capiola when he either "overlooked" all the treatment records submitted by these doctors or rejected the doctor's underlying medical findings because they were contained in the Workers' Compensation Board progress reports provided to the New York State Worker's Compensation Board. Indeed, the ALJ assessed "little weight" to the January 2015 Medical Source Statement completed by Dr.

12

Cabatu, stating, "there are no treatment records from Dr. Cabatu to support his opined limitations." [Tr. 27]. Later in his opinion, the ALJ acknowledged that Drs. Cabatu and Capiola completed progress reports for the New York State Workers' Compensation Board and opined that plaintiff was 100 percent temporarily disabled on several of the forms.[4] [Tr. 28]. However, he assessed "little weight to these conclusory disability ratings given the context of workers' compensation." [Tr. 29]. Indeed, Dr. Cabatu submitted twenty-one progress reports between November 15, 2012 and May 17, 2016 [Tr. 605-36; 706-16] and Dr. Capiola submitted ten progress reports between January 7, 2013 and May 16, 2016. [Tr. 637-46; 691-704]. While it is true that these <u>thirty-one</u> progress reports are not traditional medical treatment records, they do contain objective medical findings based on the doctors' examinations of plaintiff, with a short narrative to support a disability opinion. It is unclear from the ALJ's opinion whether he "<u>overlooked</u>" the medical findings contained on the second page of the progress reports or he "<u>rejected</u>" the doctors' examination findings as insufficient medical evidence.

---

[4] Similarly, the ALJ also noted that Drs. Paul Brisson and Vadim Kushnerik completed the same progress reports for the New York State Workers' Compensation Board and also opined that plaintiff was 100 percent temporarily disabled. These opinions were also assessed "little weight." [Tr. 28-29].

Defendant argues that the ALJ did not "discredit" the opinions from Drs. Capiola and Cabatu "simply because they did not provide treatment notes. Rather, the ALJ's point was that there <u>were no treatment records</u> from either Dr. Capiola or Dr. Cabatu that supported the limitations contained in their opinions (Tr. 27-28)." [Doc. #17-1 at 16 (emphasis added)]. While it is not possible to tease out whether the ALJ overlooked or rejected the examination findings contained in the Workers' Compensation Board progress reports, in either case, the Court finds that remand is appropriate. The Court finds that a duty to develop the record was triggered by the ALJ's repeated statements that the treatment records were not part of the record. On remand, the ALJ will consider the objective medical findings contained in the Workers' Compensation Board progress reports <u>and</u> treatment records from Drs. Cabatu and Capiola.

During the relevant period under review, there is no opinion of record by a treating physician or other medical provider that plaintiff was able to work and/or was ready to return to work. Rather, the ALJ's decision in large part indicates that he impermissibly assessed plaintiff's RFC on the basis of bare medical findings, and substituted his own judgment for competent medical opinion.

This is not a case where plaintiff suffers relatively little physical impairment, such that the ALJ may render a

common sense judgment about plaintiff's functional capacity. The
ALJ acknowledged as much by designating as "severe" plaintiff's
degenerative disc disease of the cervical spine and lumbar
spine; right shoulder impairment, status-post surgery; and
meniscus and ligament tears of the right knee impairment,
status-post surgery, [Tr. 17-19]; and assessing an RFC with
extensive and detailed limitations. [Tr. 20-21]. See Martin v.
Berryhill, No. 16-CV-6184-FPG, 2017 WL 1313837, at *4 (W.D.N.Y.
Apr. 10, 2017).

"Because the ALJ failed to cite to any medical opinion to
support his RFC findings, the Court is unable to determine if
the ALJ improperly selected separate findings from different
sources, without relying on any specific medical opinion." Hogan
v. Astrue, 491 F. Supp. 2d 347, 354 (W.D.N.Y. 2007).

> Where, as here, the medical findings and reports
> merely diagnose the claimant's impairments without
> relating the diagnoses to specific physical, mental,
> and other work-related capacities, the administrative
> law judge's "determination of residual functional
> capacity without a medical advisor's assessment of
> those capacities is not supported by substantial
> evidence." Given Plaintiff's multiple physical and
> mental impairments, this is not a case where the
> medical evidence shows "relatively little physical
> impairment" such that the ALJ "can render a common
> sense judgment about functional capacity."

Palascak v. Colvin, No. 1:11-CV-0592 MAT, 2014 WL 1920510, at *9
(W.D.N.Y. May 14, 2014); see also House v. Astrue, No. 5:11-CV-
915 GLS, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013)

("[A]lthough the RFC determination is an issue reserved for the commissioner,... an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings and as a result, an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.")(internal citation and quotation marks omitted).

Because the ALJ assessed "little weight" to Dr. Cabatu's Medical Source Statement[5] and the opinions and medical findings contained in the Workers' Compensation progress notes from Drs. Cabatu and Capiola, as well as Drs. Brisson and Kushnerik, there is no medical opinion regarding Sanchez's functional capacity to complete the activities for light work with limitations.[6] Martin, 2017 WL 1313837, at *3 ("Because the ALJ rejected Dr. Finkbeiner's opinion, the record lacks any medical opinion as to Martin's physical ability to engage in work at any exertional level on a regular and continuous basis in an ordinary work setting. There is no medical opinion regarding her capacity to sit, stand, walk, or lift, which are necessary activities for

---

[5] The January 2015 Medical Source Statement was completed before plaintiff's right knee surgery. [Tr. 680]. Right knee surgery was performed on April 7, 2015. [Tr. 785].
[6] The record also contains a consultative examiner's report from Dr. Karl Eurenius dated October 23, 2014. [Tr. 653-56]. The ALJ assessed "limited weight" to the CE's opinion because "[h]e examined the claimant shortly after her right shoulder surgery, but before her right knee surgery. Therefore, her functioning on that day is not a persuasive reflection of her functioning throughout the entire period under consideration." [Tr. 26-27].

sedentary work. See 20 C.F.R. §§404.1567(a), 416.967(a)."); see also House, 2013 WL 422058, at *4 ("Because there is no medical source opinion supporting the ALJ's finding that House can perform sedentary work, the court concludes that the ALJ's RFC determination is without substantial support in the record and remand for further administrative proceedings is appropriate."). The ALJ's assessment of the opinions of treating physicians Cabatu and Capiola is error requiring remand.

While the Commissioner is free to decide that the opinions of acceptable medical sources and other sources are entitled to no weight or little weight, those decisions should be thoroughly explained. Sears v. Astrue, Civil Action No. 2:11-CV-138, 2012 WL 1758843, at *3 (D. Vt. May 15, 2012). Indeed, when an ALJ discounts all physician opinion evidence, an evidentiary deficit exists. "[E]ven though the Commissioner is empowered to make the RFC determination, '[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities,' the general rule is that the Commissioner 'may not make the connection himself.'" Martin, 2017 WL 1313837, at *3 (quoting Wilson v. Colvin, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015)).

## B. Affirmative Duty to Develop the Record

"In light of the ALJ's affirmative duty to develop the administrative record, an ALJ cannot reject a treating physician's [opinion] without first attempting to fill any clear gaps in the administrative record." Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008)(quoting Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999)); see Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)("Even if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] sua sponte.")).

> The proceedings before an ALJ are not supposed to be adversarial. Where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history "even when the claimant is represented by counsel or ... by a paralegal." Perez v. Chater, 77 F.3d 41, 47 (2d Cir.1996); see also Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) ("It is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must herself affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.' This duty ... exists even when ... the claimant is represented by counsel." (quoting Echevarria v. Secretary of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982))).

Richardson v. Barnhart, 443 F. Supp. 2d 411, 423 (W.D.N.Y. 2006).

> [A]lthough the RFC determination is an issue reserved for the commissioner, see 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c), 416.927(d)(2), 416.946(c), "'an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence."

> Dailey v. Astrue*,* No. 09-CV-0099, 2010 WL 4703599, at
> *11 (W.D.N.Y. Oct. 26, 2010) (quoting Deskin v. Comm'r
> of Soc. Sec.*,* 605 F.Supp.2d 908, 912 (N.D. Ohio
> 2008)). Because there is no medical source opinion
> supporting the ALJ's finding that House can perform
> sedentary work, the court concludes that the ALJ's RFC
> determination is without substantial support in the
> record and remand for further administrative
> proceedings is appropriate. See 20 C.F.R. §§
> 404.1520b(c), 416.920b(c); see also Suide v. Astrue,
> 371 F. App'x 684, 689-90 (7th Cir. 2010) (holding that
> "the evidentiary deficit left by the ALJ's rejection"
> of a physician's reports, but not the weight afforded
> to the reports, required remand).

House, 2013 WL 422058, at *4.

On remand, the ALJ should develop the record as necessary to obtain opinions as to plaintiff's functional limitations from treating and/or examining sources, obtain a consultative physical examination and/or a medical expert review, and/or obtain a functional capacity evaluation. Importantly, the ALJ will review the medical findings contained on the second page of the Workers' Compensation Board progress reports and request all of the underlying treatment records from Drs. Cabatu and Capiola.

The Commissioner on remand should thoroughly explain his findings in accordance with the regulations. See Martin, 2017 WL 1313837, at *4 ("There were many avenues available to the ALJ to fill the gap in the record....")(citing Covey v. Colvin, 204 F. Supp. 3d 497, 507 (W.D.N.Y. 2016)). The Commissioner on remand, "should

employ whichever of these methods are appropriate to fully develop the record as to [Sanchez's] RFC." Id. 2017 WL 1313837, at *4.

As noted earlier, the Court's role in reviewing a disability determination is not to make its own assessment of the plaintiff's functional capabilities; it is to review the ALJ's decision for reversible error. Because the Court has found the ALJ erred in evaluating the opinions of treating Drs. Cabatu and Capiola and failing to request the underlying treatment records, it need not reach the merits of plaintiff's remaining arguments. Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this ruling. On remand, the Commissioner will address the other claims of error not discussed herein.

The Court offers no opinion on whether the ALJ should or will find plaintiff disabled on remand. Rather the Court finds remand is appropriate to permit the ALJ to develop the record accordingly.

## VI. CONCLUSION

For the reasons stated, plaintiff's Motion for Judgment on the Pleadings **[Doc. #12]** is **GRANTED.** Defendant's Motion for Judgment on the Pleadings **[Doc. #17]** is **DENIED.**

This matter is remanded to the Commissioner for further

administrative proceedings consistent with this opinion.

This is not a Recommended Ruling. The parties consented to proceed before a United States Magistrate Judge [doc. #19] on July 23, 2018, with appeal to the Court of Appeals. Fed. R. Civ. P. 73(b)-(c).[7]

SO, ORDERED at Bridgeport, Connecticut this 31st day of March 2019.

_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE

---

[7] The case was reassigned to the undersigned on March 11, 2019. [Doc. #20].